## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | **Bankruptcy No. 09-25942-CMB** |
| | ) | |
| **JUDY D. BROWN,** | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **JUDY D. BROWN,** | ) | **Doc. No.  31** |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BANK OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

The matter before the Court is the Debtor's motion seeking an award of damages on the basis of alleged violations of the discharge injunction by Bank of America.[1] For the reasons stated herein, this Court finds that, while most of the Debtor's allegations were not proven to be violations of the discharge injunction, certain statements mailed to the Debtor by Bank of America seek payment of a discharged debt. Accordingly, this Court finds that Bank of America is in contempt of court for sending said statements to the Debtor in violation of the order granting a discharge to the Debtor. Appropriate sanctions are imposed.

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334.  This is a core matter pursuant to 28 U.S.C. §157(b)(2)(O), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

## I.    Background and Procedural History[2]

Bank of America is the authorized servicing agent for the holder of the mortgage on the

Debtor's residence located at 2017 West Washington Street, New Castle, PA 16101 (the

"Property"). The loan secured by the mortgage was insured by the Federal Housing

Administration ("FHA"). A mortgage foreclosure action was commenced in 2007 against the

Debtor in the Court of Common Pleas in Lawrence County, Pennsylvania. Judgment was entered

in favor of the lender.[3] However, the Property was not sold at sheriff's sale, and the Debtor

continued to reside in the Property.

Subsequently, on August 14, 2009, the Debtor commenced her bankruptcy case.

According to the Debtor, she filed the bankruptcy case to force the completion of the foreclosure.

Shortly thereafter, the holder of Debtor's mortgage, Bank of New York as Trustee for the

Certificateholders of CWMBS 2003-R4, filed a motion for relief from the automatic stay. On

October 7, 2009, a default order was entered modifying the automatic stay and permitting the

movant "to foreclose on its mortgage or take any legal or consensual action for enforcement of

its right to possession of, or title to, said premises (such actions include but are not limited to the

---

[2] This background information is necessary in order to understand a number of the Debtor's
allegations. Much of the information is the procedural history taken from the docket. To the
extent additional information is included for the purpose of providing background, that
information was compiled from the parties' filings in this case, and the Court notes where facts
are contested.

[3] The Debtor questioned Bank of America's standing to bring a foreclosure action and
accordingly its standing to take any action with respect to the mortgage. The Court finds that the
issue is not relevant to determining whether Bank of America violated the discharge injunction
by attempting to collect a discharged debt, which is the matter presently before this Court. To the
extent the Debtor seeks to challenge the judgment entered in the foreclosure proceeding, that is
an issue that she must address with the state court where judgment was entered.

signing of a deed in lieu of foreclosure or entering into a loan modification agreement) . . . ." The

case proceeded with little activity. The Debtor was granted her discharge on December 2, 2009,

and the case was closed.

Despite the judgment entered in favor of the lender in 2007 and the fact that relief from

stay was granted in the bankruptcy case, the Property has yet to be sold at a sheriff's sale. The

Debtor remains in the residence. Although Bank of America contends that the reason for the

delay is an issue with the title that must be resolved, the Debtor disputes that there is an obstacle

to completing the foreclosure.

On May 29, 2012, the Debtor, acting *pro se*, filed a motion, accompanied by numerous

exhibits, in her closed bankruptcy case alleging violations of the discharge injunction by Bank of

America and seeking "punitive damages in the amount of $65,000 for the emotional pain and

suffering imposed upon her . . . ." The motion was denied without prejudice due only to the fact

that the case was closed. The Debtor filed a motion to reopen the case, which was granted, and a

new motion, with some variation from the first, again alleging violations of the discharge

injunction. The new motion sought damages in the amount of $124,000, consisting of $80,000 in

punitive damages and $44,000 for discretionary damages. Bank of America responded denying

any violation of the discharge injunction.

The evidentiary hearing in this matter was held on September 10, 2012. Debtor was the

only witness. As the Debtor is acting without counsel, the Court has shown leniency toward the

Debtor in construing her submissions and her arguments. Furthermore, the Court granted the

admission of Debtor's exhibits over Bank of America's general objection to relevance due to

Debtor's *pro se* status thereby providing her with a full opportunity to prove her case and explain

the relevance of the exhibits. The Court reserved the ability to analyze the relevance of Debtor's

exhibits after the conclusion of the hearing once the Debtor presented her entire case.

At the conclusion of the hearing, the parties were provided the opportunity to submit

briefs. Both Debtor and Bank of America filed briefs, and the matter is now ripe for decision.


## II.      Findings of Fact

At the outset, the Court notes that all of the documents submitted have been thoroughly

reviewed and considered, including the documents attached to each of the Debtor's motions for

sanctions.[4] However, documents which the Court determined to be irrelevant to this matter may

not be directly addressed herein as those items did not assist the Court in reaching a decision.

Based upon the relevant, credible evidence submitted at the evidentiary hearing, the testimony of

the Debtor, and the entire record of this proceeding, the Court finds as follows:[5]

1.       Despite the judgment entered in favor of the lender in 2007 and the fact that relief from

stay was granted in the bankruptcy case in 2009, the Property has yet to be sold at a sheriff's

sale, and the Debtor remains in the residence.

2.       After the Debtor was granted a discharge in her bankruptcy case, the Debtor contacted

Bank of America (directly and indirectly through various agencies which then forwarded her

---

[4] A number of documents were attached to the Debtor's first motion for sanctions filed at Doc.
No. 22. Due to the Debtor's *pro se* status and her unfamiliarity with Court procedures, this Court
has reviewed all documents submitted by the Debtor.

[5] Although the Debtor alleged in her motion and post-hearing brief that a representative of Bank
of America informed her neighbor that she was behind in her mortgage payments, no evidence
was introduced in support of this allegation at the hearing. The neighbor was not called to testify.
Therefore, the Court will not make any finding as to the allegation.

questions and concerns to Bank of America) to inquire about the origination and servicing of the loan.

3.      After the Debtor was granted a discharge in her bankruptcy case, she was contacted by Bank of America by phone and through various correspondence, including notices and several statements.

4.      After the debtor was granted a discharge in her bankruptcy case, Bank of America continued to report a delinquency code with respect to the loan to the FHA and Department of Housing and Urban Development (HUD) for purposes of a system maintained to track loan delinquencies.

5.      Based upon the only evidence produced with respect to the effect of the delinquency code reported to FHA and HUD on the Debtor, removing the delinquency code from the system was not necessary in order for the Debtor to obtain another FHA loan.[6]

6.      Although the Debtor has not made a mortgage payment since 2007, due to an error by Bank of America, a mortgage payment for May 2012 appeared on the Debtor's credit report.

        The Court now turns to whether any or all of Bank of America's conduct violated the discharge injunction.

---

[6] The piece of evidence from which the Court makes this finding is an email dated September 26, 2011, which appears to be a reply from an employee of HUD to the Debtor. The email, submitted to the Court by the Debtor, informed the Debtor that if she is attempting to obtain another FHA loan, "this agency does not require a cleared CAIVRS to accomplish this aim. Any lender familiar with origination requirements for FHA loans is aware of this." The parties did not identify precisely what "CAIVRS" is for the benefit of the Court. According to the HUD website, CAIVRS is the Credit Alert Verification Reporting System "developed by the Department of Housing and Urban Development in June 1987 as a shared database of defaulted Federal debtors . . . ." *See* http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/sys/caivrs.

### III.    Conclusions of Law

The Debtor made a number of allegations regarding improper conduct by Bank of America throughout this proceeding. However, unless such conduct constitutes a violation of the discharge injunction, it is not relevant to the matter before the Court and will not be addressed herein.[7] Although the Debtor asserts that Bank of America's conduct has impaired her fresh start, the imposition of sanctions is appropriate only if a party took action prohibited by §524(a). *See Paul v. Iglehart* (*In re Paul*), 534 F.3d 1303, 1307 (10th Cir. 2008).

Section 524 of the Bankruptcy Code "enjoins, among other things, any act to collect or recover as a personal liability of a debtor in bankruptcy a debt that was discharged in accordance with §727(a) of the Bankruptcy Code." *See Bonanno v. HSBC Card Servs.* (*In re Bonanno*), Adv. No. 08-7035 BM, 2009 WL 8556815, at *3, 2009 Bankr. LEXIS 5544, at *6  (Bankr. W.D.Pa. March 24, 2009). Specifically, §524(a)(2), provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . [.]" The Debtor contends that Bank of America violated the injunction and that she is entitled to an award of damages.

---

[7] At the evidentiary hearing, the Debtor made several references to alleged violations of the Fair Debt Collection Practices Act (FDCPA). The Debtor neither established this Court's jurisdiction with respect to such a claim nor did she clearly state a claim pursuant to the Act in her motions. This Court will not address any fleeting references to the FDCPA made by the Debtor at the evidentiary hearing. In addition, to the extent the Debtor asserted that her loan did not qualify as an FHA loan in the first place, the allegation has no relevance to this proceeding. The Court makes a finding only as to relevance and makes no findings as to the propriety of Bank of America's conduct with respect to these matters.

Although the Third Circuit has yet to address "whether §524 implies a private right of

action, either alone or through §105(a),[8] . . . the weight of circuit authority is that it does not."

*Joubert v. ABN AMRO Mortg. Group, Inc.* (*In re Joubert*), 411 F.3d 452, 456 (3d Cir. 2005).

Unlike a violation of the automatic stay for which a remedy is provided under §362(k)(1), §524

does not explicitly set forth a substantive right to remedy a discharge injunction violation. *See*

*Bonanno*, 2009 WL 8556815, at *3, 2009 Bankr. LEXIS 5544, at *7. Courts have determined

that the remedy available to a debtor asserting a violation of the discharge injunction is a civil

contempt proceeding pursuant to §105(a). *See Bonanno*, 2009 WL 8556815, at *5, 2009 Bankr.

LEXIS 5544, at *12-13.

In order to establish civil contempt, the debtor must prove that "(1) a valid court order

existed; (2) the alleged contemnor knew of the order; and (3) the contemnor disobeyed the

order." *See Bonanno*, 2009 WL 8556815, at *6, 2009 Bankr. LEXIS 5544, at *13-14.[9] In this

case, there has been no dispute regarding the validity of the discharge order entered on December

2, 2009 nor has Bank of America contended at any time that it lacked knowledge of the order

after it was entered. Therefore, the remaining issue before this Court is whether any of the

---

[8] 11 U.S.C. §105(a) provides, "The court may issue any order, process, or judgment that is
necessary or appropriate to carry out the provisions of this title. No provision of this title
providing for the raising of an issue by a party in interest shall be construed to preclude the court
from, sua sponte, taking any action or making any determination necessary or appropriate to
enforce or implement court orders or rules, or to prevent an abuse of process."

[9] Some courts require proof of civil contempt by clear and convincing evidence. *See Bonanno*,
2009 WL 8556815, at *6, 2009 Bankr. LEXIS 5544, at *14. Others require proof by a
preponderance of the evidence. *See In re Wallace,* 2011 WL 1335822, at *4, 2011 Bankr. LEXIS
1168, at *10-11 (Bankr.M.D.Fla. Apr. 5, 2011) (referring to the divergence in case law as to the
appropriate standard of proof). This Court need not decide the appropriate standard as it would
reach the same conclusion whether proof was required by a preponderance of the evidence or
clear and convincing evidence.

actions taken by Bank of America constitute a violation of that order, i.e., an attempt to collect a

discharged debt.

The Order granting discharge provides, in pertinent part, as follows:

> The discharge prohibits any attempt to collect from the debtor a debt that
> has been discharged. For example, a creditor is not permitted to contact a debtor
> by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other
> property, or to take any other action to collect a discharged debt from the debtor. .
> . . A creditor who violates this order can be required to pay damages and
> attorney's fees to the debtor.
> However, a creditor may have the right to enforce a valid lien, such as a
> mortgage or security interest, against the debtor's property after the bankruptcy, if
> that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may
> voluntarily pay any debt that has been discharged.

*See* Doc. No. 17. In this case, while Bank of America has the right to enforce its mortgage

against the Property after discharge, it has no right to demand payment from the Debtor on the

discharged debt.

The Court notes that a number of factors caused additional complication in this case.

First, the fact that the Debtor remains in the residence and continues to contact Bank of America

with various questions and concerns makes it difficult to draw a bright line between permissible

and impermissible contact by Bank of America. In addition, Bank of America certainly retains its

rights with respect to recovery against the Property and may inspect and survey the property in

accordance with such rights regardless of the fact that the Debtor continues to reside there. To

the extent Bank of America has encountered title issues stalling the foreclosure process, the

delay in completing foreclosure has only aggravated the situation. Notwithstanding these

circumstances, Bank of America must comply with the terms of the discharge order and will be

held accountable for failure to do so.

The Court will address the following conduct by Bank of America which the Debtor

alleges violated the discharge injunction: (1) contacting the Debtor, (2) failing to complete

foreclosure on the Property, (3) reporting Debtor as delinquent to the FHA and HUD, and (4)

reporting to credit bureaus. The Court will address each in turn.


Contacting the Debtor

Bank of America contacted the Debtor after she was granted her discharge. However,

simply contacting a debtor, without more, is not a violation of the discharge injunction.[10]

According to the Debtor, representatives of Bank of America called her on various

occasions to offer her assistance to avoid foreclosure and obtain a loan modification. It is not

clear on the record whether all calls were initiated by Bank of America or whether Bank of

America was responding to the Debtor's inquiries. As the phone calls were described by the

Debtor, the Court does not interpret the calls to have been threatening or in the nature of

collection calls. To the extent the Debtor expressed her disinterest in the assistance offered by

Bank of America representatives or dissatisfaction with their responses to her inquiries, she

would hang up the phone. Based on the testimony, this Court finds that the phone calls were not

demands for payment of a discharged debt. No violation of the discharge injunction occurred as a

result of these phone calls.

At the evidentiary hearing, the Debtor testified that an individual came to her door asking

her to contact her lender about the mortgage. She did not testify that there was a demand for

---

[10] The Debtor offered as an exhibit a copy of a cease and desist letter from her former counsel
(not her bankruptcy counsel) to Bank of America. The letter is written pursuant to the FDCPA
and applicable state law. The Court notes that the letter makes no mention of the bankruptcy
discharge nor does it contemplate the fact that the Debtor continued to make inquiries regarding
the mortgage to which Bank of America responded. As stated, contact with the Debtor is not per
se prohibited by the discharge injunction. Rather, demands for payment of discharged debts are
prohibited.

payment but rather that there was simply a request for contact. Therefore, based upon the

Debtor's testimony, the Court finds that no demand for payment was made and no violation of

the discharge injunction occurred.

The Debtor submitted a variety of correspondence which she received from Bank of

America, including notices and statements, for the Court's review. The Court carefully reviewed

each document. The documents include generic informational letters and notices in which no

demand for payment is made. The Court finds that such general notices do not constitute

violations of the discharge injunction. The Court further finds that notices informing the Debtor

of a change in the loan servicer, even though a payoff amount is included, did not demand

payment. Further clarifying this point is the inclusion of disclaimer language, such as the

following:

> Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or
> have received a discharge of the home loan debt referenced above, this statement
> is being furnished for informational purposes only. It should not be construed as
> an attempt to collect against you personally. . . . In the future, you may receive a
> discharge in bankruptcy. Under those circumstances, by operation of law, Bank of
> America, N.A. will retain the ability to enforce its rights against the property
> securing this loan should there be a default under the terms of your loan
> documents.

*See* FDCPA and State Law Notice, Exhibit to Doc. No. 22, Page 3 of 40.[11] Although the Court is

not concluding that this disclaimer language will remedy an overt demand for payment, where no

such demand is made and this language is included, as is the case here, the Court finds no

violation of the discharge injunction.

---

[11] Numerous documents were attached to the motion filed at Doc. No. 22. It is difficult to
determine which pages comprise one document and it is clear that only portions of some
documents are attached. The documents included as an exhibit total forty pages. For the purpose
of identification herein, this Court will cite to the documents as they appear within the forty
pages, e.g., Page 1 of 40.

The majority of documents submitted by the Debtor cannot be construed as demands for payment. This Court finds that by providing a payoff amount, offering assistance to avoid foreclosure, or inviting the Debtor to contact Bank of America, violations did not occur. Furthermore, sending a property inspector to examine the property and providing notice of the inspection, even on the Debtor's front door, does not establish an attempt to obtain payment by Bank of America. Although the Debtor complains of all contact made by Bank of America, it is noteworthy that in some instances, Debtor's own initiation of communication, directly or indirectly, with Bank of America resulted in additional contact. The fact that a response from Bank of America did not, in Debtor's opinion, answer questions to her satisfaction does not transform the correspondence into a violation of the discharge injunction.

In addition to the innocuous documents described above, several mortgage statements were sent to the Debtor. *See* Exhibits to Doc. No. 22, Pages 14-19 of 40, and Doc. No. 36. The statements indicate monthly payments due for March through June 2012, well after the Debtor was granted a discharge. Courts assessing similar facts have reached different conclusions on whether such statements are efforts to collect a debt. Their conclusions depended largely upon the content of the statements.

In *In re Bruce*, the bankruptcy court found a mortgage company "in civil contempt for knowingly and willfully violating the discharge injunction . . . by continuing to send the Debtor requests for payment and telephoning the Debtor at his place of employment." *See In re Bruce*, No. 00-50556 C-7, 2000 WL 33673773, *4 (Bankr. M.D.N.C. Nov. 7, 2000). In that case, after the mortgage company (1) received notice that the Debtor vacated the property, (2) obtained relief from stay to proceed with foreclosure, and (3) received notice of the debtor's discharge, it mailed mortgage loan statements to the debtor. *Id.* at *1. The statements, which contained

11

disclaimer language acknowledging the bankruptcy case and indicating they were not demands for payment, included payment coupons showing current payments due and the current due dates. *Id.* at *1-2. Although the lender was made aware that the debtor moved, it continued to send notices offering the debtor assistance to keep his home. *Id.* at *2. The lender was held to have violated the discharge injunction based on those facts.

Although addressing an alleged violation of the automatic stay, the analysis in *Schatz v. Chase Home Fin.* (*In re Schatz*), 452 B.R. 544 (Bankr. M.D.Pa. 2011), is also relevant. In that case, the court examined whether a statement sent to the debtor constituted an act to collect, assess, or recover a claim against the debtor. *Id.* at 548. The statement at issue "listed various items including the total payment, applicable interest rate, principle balance, and an address to send payment." *Id.* at 549. However, in the center of the statement, in what the court found to be a conspicuously outlined box, a disclaimer noted that the statement was for informational purposes only and not an attempt to collect a debt for purposes of those in bankruptcy proceedings. *Id.* The court found the disclaimer to be significant and also noted, "The Statement did not otherwise make any threats or provide any consequences if the Debtor failed to make a payment, and further it [did] not require any action on part of the Debtor to retain his property. Other courts have held that sending a debtor informational notices regarding their loan is not a violation of the automatic stay." *Id.* The court found it to be significant that the statement did not indicate the amount as being past due, did not demand immediate payment, and did not threaten consequences for the debtor's failure to act. *Id.* at 550 (distinguishing the facts from those in *Butz v. People First Fed. Credit Union* (*In re Butz*), 444 B.R. 301 (Bankr. M.D.Pa. 2011)). Accordingly, no violation of the automatic stay was found on those facts. *Id*. at 550.

In *Bruce* and *Schatz,* the courts carefully analyzed the contents of the statements in light of the particular facts presented. In both cases, the statements sent to the debtors included disclaimer language regarding bankruptcy. The court in *Bruce* found the language was not sufficient to negate the demand for payment. Furthermore, it is noteworthy that phone calls and statements continued even after the lender was given notice that the debtor vacated the property at issue, making any contact with the debtor highly suspect. In *Schatz,* the court relied primarily upon the disclaimer language and the phrasing in the statement to conclude that no violation of the automatic stay occurred.

This Court likewise analyzed the language of the statements in light of the facts of this case. The statements sent to the Debtor in this case are distinguishable from *Bruce* and *Schatz* in at least one very significant way. The disclaimer language, which was included in other correspondence from Bank of America, is lacking in these statements.[12] Furthermore, the statements provide the amount of the payment and when it is due, a late charge if the payment is not received by a certain date, and the past due amount. The Court finds that the statements do

---

[12] *Cf. Jones v. BAC Home Loans Servicing, L.P.* (*In re Jones*), Adv. No. 09-50281, 2009 WL 5842122, 2009 Bankr. LEXIS 4316 (Bankr. S.D. Ind. Nov. 25, 2009). In *Jones*, the Court addressed §524(j), which is an exception to the discharge injunction for a creditor that retains a security interest in real estate that is the debtor's principal residence. The exception permits the creditor to take acts in the ordinary course of business between the debtor and creditor but limits the conduct to seeking periodic payments associated with a valid security interest in lieu of in rem relief. Although Bank of America did not raise the exception as applicable in this case, this Court notes that, in the *Jones* case where the exception was found to apply, the court emphasized that the communication sent to the debtor was "replete with references that the Debtor was not obligated to pay the debt owed. . . ." *See Jones*, 2009 WL 5842122, at *3, 2009 Bankr. LEXIS 4316, at *8. As stated above, in this case, the disclaimer language was not included in the statements sent to the Debtor indicating payment was due.

seek payment from the Debtor and violate the discharge injunction. Bank of America is found in

civil contempt for violating an order of this Court.


Failing to Complete Foreclosure

The Debtor asserts that Bank of America's actions, including failure to complete

foreclosure, indicate a scheme to collect the discharged debt. According to Bank of America, the

delay in foreclosure is related to an ongoing title dispute with respect to the Property. The Debtor

contends there is no obstacle to proceeding with foreclosure. In support of her position, the

Debtor introduced as an exhibit a letter dated May 24, 2012 addressed to her from Fidelity

National Title Insurance Company ("Fidelity"). The letter states that Bank of America's claim

was denied and Fidelity closed its file on the matter. The letter does not establish the facts that

the Debtor contends, i.e. that there is no cloud on the title of the Property and foreclosure could

have been completed. The Debtor failed to prove that Bank of America is purposefully delaying

foreclosure.

Even if no obstacle to foreclosure exists, the Debtor must prove that the creditor's actions

were intended in some manner to recover the discharged debt. *See Pollilo v. Harleysville Nat'l

Bank* (*In re Pollilo*), Adv. No. 09-0287, 2010 WL 235125, at *6, 2010 Bankr. LEXIS 191, at *16

(Bankr. E.D.Pa. Jan. 15, 2010). "[M]erely maintaining a . . . lien against a property, without

additional coercive attempts to collect the debt as a personal liability, does not violate the

discharge injunction. *See Pollilo*, 2010 WL 235125, at *6, 2010 Bankr. LEXIS 191, at *17

(quoting *Casarotto v. Mo. Dep't of Revenue* (*In re Casarotto*), 407 B.R. 369, 378

(Bankr.W.D.Mo.2009)). The bank has no duty to foreclose on the Property and, based upon the

facts of this case, this Court finds that the delay in foreclosure in no way forms a basis for the

assertion that Bank of America is attempting to collect a discharged debt. Although the Debtor

asserts that the failure to foreclose indicates a scheme to collect the discharged debt, the credible

evidence does not support this contention.


Reporting as Delinquent to FHA and HUD

The Debtor also contends that Bank of America improperly continues to report a

delinquency code to FHA thereby violating the discharge injunction by preventing her from

obtaining FHA financing and a fresh start. However, based upon the only evidence produced

with respect to the effect of the delinquency code, removing the delinquency code is not

necessary in order for the Debtor to obtain another FHA loan. The Debtor produced no credible

evidence in support of her allegation that the manner in which Bank of America reports to the

FHA and HUD has, in fact, prevented her from obtaining FHA financing or other forms of

government assistance. The Debtor did not offer any credible evidence of failed attempts to

obtain loans nor did she establish a causal relationship between the delinquency code and any

such rejection.

Furthermore, Bank of America contends that it is properly reporting to the FHA and

HUD. Regardless of this dispute between the parties as to the proper code to report, the Debtor

failed to prove that the manner in which Bank of America reports to the FHA is an attempt to

collect a discharged debt. If the creditor is not seeking to collect a discharged debt, then its

conduct, regardless of its other faults, does not give rise to a violation of the discharge

injunction. *See Pollilo*, 2010 WL 235125, at *6, 2010 Bankr. LEXIS 191, at *17-18 (citing *Paul*,

534 F.3d at 1308). This Court need not determine for purposes of this proceeding whether Bank

of America is properly reporting to FHA and HUD pursuant to the applicable guidelines as the

Debtor failed to prove that the code used by Bank of America to report to the FHA and HUD is an attempt to collect a debt in violation of the discharge injunction.[13]

Reporting to Credit Bureaus

It is undisputed that a mortgage payment for May 2012 was reflected on the Debtor's credit report due to an error by Bank of America. For purposes of background, Bank of America explained, and the Debtor did not dispute, that the mistaken payment resulted from a refund check from the Lawrence County Sheriff's Office related to an attempted foreclosure sale of the Property. Bank of America inadvertently credited the refund to the oldest outstanding loan payment rather than refunding the escrow portion of the account for the fees advanced and returned. Because the amount credited to the outstanding loan payment was an insufficient amount to qualify as a loan payment, a "refund" check was mailed to the Debtor in the amount of $921.82 as though it was she who made the payment. The Court has been advised that the error on Debtor's credit reports has been corrected. The Debtor did not prove a violation of the discharge injunction based on the error. In fact, the Debtor benefitted from Bank of America's mistake in the amount of $921.82.

Conclusion

Only action taken by Bank of America in violation of §524 will be sanctioned. Based upon the credible evidence, this Court finds that Bank of America violated the discharge

---

[13] The Debtor contends that an indemnification agreement between Bank of America and HUD is evidence that Bank of America is improperly reporting a delinquency code. The Debtor failed to establish the relevance of the agreement to the allegations of a discharge violation.

injunction by sending the Debtor mortgage statements which sought payment of the discharged

debt. Accordingly, Bank of America is found to be in civil contempt. Therefore, the Court will

address appropriate sanctions.


**IV.    Sanctions**

"The Supreme Court distinguishes between civil and criminal contempt, describing civil

contempt sanctions as 'remedial and for the benefit of the complainant' and criminal contempt

sanctions as 'punitive, to vindicate the authority of the court.'" *Int'l Plastics & Equip. Corp. v.*

*Taylor's Indus. Servs., LLC*, No. 07-1053, 2011 WL 1399081, at *4, 2011 U.S. Dist. LEXIS

39496, at *13 (W.D.Pa. Apr. 12, 2011) (citing *Int'l Union, United Mine Workers of Am. v.*

*Bagwell*, 512 U.S. 821, 827–828 (1994)). "Upon a finding of civil contempt, a bankruptcy court

has the power to issue sanctions such as costs, compensatory damages and attorneys' fees." *In re*

*Meyers*, 344 B.R. 61, 66 (Bankr. E.D.Pa. 2006). In order to compensate a debtor for actual

damages resulting from violations of the discharge injunction, courts have awarded damages for

lost wages and emotional distress. *Id.* Although not all courts agree that damages for emotional

distress are appropriate for civil contempt, it is clear that a significant purpose of the discharge

injunction is to free a debtor from the stress, anxiety, and harassment of continued collection

activities. *Id.* at 66-67. In determining appropriate sanctions in this case, the Court considers the

purpose of civil contempt sanctions, specifically focusing on the remedial purpose.[14]

---

[14] This Court need not reach the issue of whether punitive damages may be awarded for
violations of the discharge injunction as the Court finds that the actions of Bank of America did
not rise to the level of egregious conduct that would justify an award of punitive damages.

The Debtor struggled to explain her entitlement to damages. At the evidentiary hearing, the Debtor sought damages of at least the amount needed to pay her moving expenses and a twenty-percent down payment, estimated at approximately $18,000, to enable her to obtain a new residence. The Court finds that the Debtor's claim for damages is not related to any harm caused by the receipt of the mortgage statements.

The Debtor contends that she suffered emotional distress as a result of Bank of America's actions. Courts may rely upon the debtor's own testimony as opposed to requiring medical testimony for purposes of establishing emotional distress. *Meyers*, 344 B.R. at 67. However, in determining whether to award damages for emotional distress where the conduct is not patently egregious, as is the case here, some courts have required more than a debtor's self-serving testimony. *See Wingard v. Altoona Reg'l Health Sys.* (*In re Wingard*), 382 B.R. 892, 904-05 (Bankr.W.D.Pa. 2008) (discussing in the context of a violation of the automatic stay). At the evidentiary hearing, the Debtor offered no corroborating evidence to establish emotional distress resulting from the receipt of the mortgage statements.[15] Therefore, this Court finds that the Debtor has failed to prove entitlement to damages for emotional distress.

While the violation committed by Bank of America was not severe, this Court finds that the Debtor was forced to bring the matter to the Court's attention in order to receive the full benefit of her discharge, and she will be compensated accordingly. The Debtor paid a filing fee in the amount of $260 to reopen her bankruptcy case to obtain relief. However, the filing fee

---

[15] In fact, the only evidence offered in addition to Debtor's testimony in support of her request for damages for emotional distress were photographs of her living conditions which the Court finds irrelevant to determining appropriate sanctions in this case. In Debtor's post-hearing brief, she reports additional harm which she claims resulted from Bank of America's conduct. Even if the Debtor had properly included these statements in her testimony at the hearing, the statements are without corroborating evidence.

represents only a portion of what is necessary to fully compensate the Debtor for her efforts in

bringing this matter to the Court's attention and preparing and attending hearings. Although the

Debtor did not incur attorney's fees as she acted without counsel, the Court finds that she should

be compensated for her own time and effort expended in this matter. The Debtor shall not bear

the cost of enforcing the injunction. Based upon the foregoing, this Court finds that a nominal

amount should be paid to the Debtor. Therefore, $3,000.00 in compensatory damages is

appropriate as sanctions imposed upon Bank of America to remedy the violation of the discharge

injunction.

**V.      Conclusion**

For the foregoing reasons, this Court finds that Bank of America violated the discharge

injunction by sending mortgage statements to the Debtor which sought payment of a discharged

debt, and Bank of America is found to be in civil contempt. Sanctions in the amount of

$3,000.00 are appropriate as compensation to the Debtor. An appropriate order will be entered.

Date: November 1, 2012                             __/s/ Carlota M. Böhm_____
                                                   Carlota M. Böhm
                                                   United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
        Office of the United States Trustee
        Judy D. Brown
        Gary J. Gaertner, Esq.
        Jarrod D. Shaw, Esq.
        Joseph D. Filloy, Esq.
        Bank of America